UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ASHLEY M. GARRETT, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 2:14-CV-155-LRS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 20).

## JURISDICTION

Ashley M. Garrett, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on May 10, 2011. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing and a hearing was held on December 14, 2012, before Administrative Law Judge (ALJ) Donna W. Shipps. Plaintiff, represented by counsel, testified at the hearing, as did K. Diane Kramer, as a Vocational Expert (VE). On December 27, 2012, the ALJ issued a decision denying benefits. The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. § 1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 28 years old. She has less than a high school education.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 2**

decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred: 1) by discounting Plaintiff's credibility regarding her symptoms and her claimed physical and mental limitations; 2) by discounting the opinions of her treating physician and examining therapist; and 3) by finding Plaintiff does not have any "severe" physical and/or mental impairments.

## DISCUSSION
## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 3**

not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. § 416.920(a)(4)(v).

     The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

     The ALJ found the following: 1) Plaintiff has medically determinable impairments which include generalized anxiety, an adjustment disorder, and history of right carpal tunnel syndrome release and mild left carpal tunnel syndrome with no evidence of peripheral neuropathy or upper extremity nerve

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 4**

restriction; but 2) Plaintiff does not have a "severe" impairment or combination of impairments. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**SEVERE IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683,

687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id*. In *Webb*, the Ninth Circuit found that although the medical record painted an incomplete picture of the plaintiff's overall health during the relevant period, it included evidence of problems sufficient to pass the de minimis threshold of step two. *Id*. Furthermore, although the plaintiff ultimately bore the burden of establishing his disability, the ALJ had an affirmative duty to supplement the plaintiff's medical record, to the extent it was incomplete, before rejecting the plaintiff's application at such an early stage in the analysis. *Id*. The circuit noted:

> "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.3d 441, 443 (9th Cir. 1983) (per curiam). The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is inadequate. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

*Id*.

As in the instant case, the ALJ in *Webb* found the claimant's "subjective complaints" and "assertions regarding the disabling extent of his functional limitations . . . [we]re exaggerated and not credible because he was capable of performing household tasks and had sought employment during the relevant period." *Id*. at 687-88. The Ninth Circuit found those were not "clear and convincing" reasons for rejecting the claimant's subjective complaints and assertions[1]:

---

[1] "Unless there is affirmative evidence to show that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 6**

> That Webb sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself. "The mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal citation omitted).

*Id*. at 688.

In the instant case, the ALJ noted that "[w]hile [Plaintiff] appeared to minimize her activities and capacity level, she testified that she did take care of her home and children, including shopping, cooking and housekeeping." (Tr. at p. 465). The ALJ further noted that Plaintiff "continued to work part-time throughout this period, and has reported that she was actively looking for employment." (*Id*.).

In *Webb*, the Ninth Circuit pointed out that the ALJ viewed Webb's objective medical evidence simply as part of his subjective complaints in finding his assertions to be "exaggerated, and not credible." 433 F.3d at 688. The circuit agreed that "[c]redibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." *Id*. The circuit found, however, that there was "no inconsistency between Webb's complaints and his doctor's diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two," and furthermore, that "Webb's clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss Webb's complaints as altogether unfounded." *Id*. As such, the circuit concluded there was not "the **total absence** of objective evidence of severe medical impairment . . . as was the case in *Ukolov v. Barnhart*, 420 F.3d 1002 [, 1006] (9th Cir. 2005), where we affirmed a finding of no disability at step two when even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate."

**ORDER GRANTING PLAINTIFF'S  
MOTION FOR SUMMARY JUDGMENT- 7**

*Id*. (Emphasis added).

So too here, there is not a "total absence of objective evidence of severe medical impairment" and Plaintiff's physician does not dismiss her complaints as altogether unfounded. There is no inconsistency between Plaintiff's complaints and her physician's diagnoses. In concluding that Plaintiff did not have either a severe mental or physical impairment, the ALJ relied on her own interpretation of the medical evidence and the conclusions of state agency medical consultants (Tr. at pp. 52-66) who did not examine the Plaintiff.

Plaintiff was seen at Group Health Riverfront Medical Center on a regular basis between January 2010 and September 2012. The physician who saw Plaintiff the most appears to have been Mariah R. Schimpf, M.D.. In January 2010, Dr. Schimpf noted she had referred the Plaintiff to Northwest Rheumatology and that "[t]he rheumatologist reviewed her records and declined to see her, because they said her records confirm that she has fibromyalgia and they don't see patients for that problem." (Tr. at p. 287). Plaintiff reported having migraine headaches. (*Id*.). Dr. Schimpf noted that Plaintiff was taking Wellbutrin for depression and cyclobenzaprine, a muscle relaxant. (*Id*.). Dr. Schimpf was aware of the stressors existing in Plaintiff's family and home life, but that did not cause her to question the legitimacy of Plaintiff's symptoms and complaints. (Tr. at pp. 223, 263 and 287). In May 2010, Dr. Schimpf reported that Plaintiff had a history of "[g]eneralized anxiety and fibromyalgia" and she had also been taking nortriptyline, another anti-depresssant. (Tr. at p. 263). Dr. Schimpf diagnosed "Major Depression, recurrent" and prescribed Effexor for the Plaintiff, yet another anti-depressant, also known generically as venlafaxine. (Tr. at p. 264). In addition to depression, Dr. Schimpf diagnosed "anxiety," indicating Plaintiff "just cannot handle everything all at once," seemingly referring to Plaintiff's family issues. The doctor encouraged her to participate in counseling. (Tr. at p. 264). In July 2010, Dr. Schimpf added tinzanidine, a muscle relaxant, to Plaintiff's list of

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 8**

prescription medications. (Tr. at p. 256). In August 2010, Dr. Schimpf reiterated her assessment of "Depression and Severe Anxiety, Long-Standing." (Tr. at p. 252). The doctor's plan was as follows:

> Will continue her at the higher dose of venlafaxine 225 mg daily. I gave here the extended release. She will stay on nortriptyline 30 mg at night, tizanidine and topiramate for her headaches. Because of all the medication she is on, I am not feeling comfortable with starting her on clonazepam for anxiety, or BuSpar, or even migraine medication that would cause her to increase her serotonin levels. I did recommend that she see a counselor and hopefully we can get a psychiatry consultation with that, as well. Completed DSHS forms and disability forms, recommending neuropsych testing, psychiatric consultation, and long-term disability evaluation.

(*Id*.).

Dr. Schimpf's diagnoses remained largely consistent through her course of treating the Plaintiff. And so did the medications she prescribed for the Plaintiff, (Tr. at pp. 187-192), although by November 2011, Plaintiff was taking a different anti-depressant, fluoxetine, (Tr. at pp. 350-51), and in July 2012, Dr. Schimpf added Ativan, an anxiety medication also known generically as lorazepam. (Tr. at pp. 437-40; 448-49).

It is acknowledged that Dr. Schimpf and the other providers at Group Health Riverfront Medical Center appear to have assumed the Plaintiff had a history of fibromyalgia (Tr. at p. 236) and depression (Tr, at p. 251) which pre-dated her first visit to the medical center. Nevertheless, as noted above, none of them questioned the legitimacy of those diagnoses or the Plaintiff's complaints.

In August 2012, Plaintiff was seen by psychotherapist, Diane Thompson, M.S., LMHC (Licensed Mental Health Counselor). She diagnosed the Plaintiff with Anxiety Disorder NOS (Not Otherwise Specified), Depressive Disorder NOS, and Posttraumatic Stress Disorder, and assigned her a Global Assessment of

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 9**

Functioning (GAF) score of 45.[2] (Tr. At p. 454). She repeated this assessment in September 2012. (Tr. at p. 455). In December 2012, Ms. Thompson completed a "Mental Medical Source Statement" in which she indicated Plaintiff suffered moderate to marked limitations in certain aspects of sustained concentration and persistence, social interaction and adaptation. (Tr. at pp. 421-24). The ALJ found Ms. Thompson's assessment not persuasive because "[t]he claimant's treatment history with Ms. Thompson is limited to two visits in August and September 2012, are lacking in meaningful factual information, and according to all other evidence, the claimant's complaints are situational and generally consist of dysfunctional familial relations." (Tr. at p. 465).

      While Ms. Thompson's assessment appears to be somewhat conclusory in nature, it is consistent with the diagnoses of anxiety and depression of Dr. Schimpf and the other providers at Group Health Riverfront Medical Center. Admittedly, Plaintiff's medical records are not a model of clarity, but they are nonetheless sufficient to establish the existence of severe mental and physical impairments. At this juncture, the opinions of Plaintiff's medical providers conflict only with interpretations of the medical evidence offered by **non-examining** physicians. Their interpretations are insufficient to sustain the ALJ's conclusion that Plaintiff does not have "severe" mental and physical impairments. While at a later juncture, the Plaintiff's daily living activities and attempted employment may legitimately be factored into an assessment of credibility regarding her subjective complaints and her residual functional capacity, they are not sufficient at this

---

[2] A GAF score of 41-50 means "serious" symptoms or "serious" impairment in either social, occupational, or school functioning. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 10**

juncture to discount the medical evidence which establishes she is suffering from severe mental and physical impairments.

This case will be remanded for further proceedings and analysis beyond step two of the sequential evaluation process.  On remand, the ALJ may wish to consider ordering the Plaintiff undergo consultative physical and mental examinations to clarify and complete the record regarding her medical history and assist in determining her residual functional capacity.  The ALJ has a duty, even if a claimant is represented by counsel, to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" and be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Vidal v. Harris*, 637 F.2d 711, 713 (9th Cir. 1981).

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 20) is **DENIED**.  The Commissioner's decision is **REVERSED** and pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for additional proceedings and/or findings consistent with this order.  An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___13th___ of April, 2015.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 11**